# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

Superior Court

ESSEX

CA. NUMBER:

*20 11CV 00476*

| | |
|---|---|
| MARY K. O'BRIEN<br>  Plaintiff ) | |
| ) | |
| Vs. ) | |
| ) | |
| CVS CORPORATION )<br>  Defendant ) | Complaint for Damages and Jury Trial |
| & ) | |
| SEDGWICK CLAIM ) | |
| MANAGEMENT ) | |
| SERVICES ) | |
|   Defendant ) | |

PARTIES AND JURISDICTION

1. Plaintiff MARY KATHRYN O'BRIEN  (Hereinafter "O'BRIEN" ) is a resident of Newbury, Massachusetts.

2. Defendant CVS HEALTH CORPORATION (Hereinafter "CVS")  is a Rhode Island corporation regularly doing business in Massachusetts with numerous stores in Massachusetts and has a Registered Agent CT CORPORATION SYSTEM at 155 FEDERAL STREET, SUITE 700 BOSTON, MA 02110 USA and as such is subject to Massachusetts long arm statute, G. L. c. 223A which provides that "a court may exercise

personal jurisdiction over a nonresident defendant who "transact[s] any business in this commonwealth." G. L. c. 223A, Section 3 (a)

3. Defendant CVS HEALTH CORPORATION (Hereinafter "CVS") owns and operates the store in question at 13 and ½ Pond Street in Newburyport, Massachusetts where incident happened.

4. Defendant SEDGWICK CLAIM MANAGEMENT SERVICES (Hereinafter "SEDGWICK" ) is a corporation that provides liability insurance to entities in the Commonwealth of Massachusetts and has Registered Agent Corporation Service Company at 84 State St, Boston MA 02109 and  as such is subject to Massachusetts long arm statute, G. L. c. 223A which provides that "a court may exercise personal jurisdiction over a nonresident defendant who "transact[s] any business in this commonwealth." G. L. c. 223A, Section 3 (a)

5. Damages could possibly exceed Fifty Thousand (50,000.00) dollars.

## BACKGROUND OF CASE

6. On November 17th, 2017, Plaintiff O'Brien of the above address was walking through the Defendant CVS's Pond Street in Newburyport, MA

7. As the CVS store was crowded at the time, Ms. O'Brien walked down the "chilled beverage" aisle, one that she did not normally use to get to the pharmacy at the back of the store.

8. As Ms. O'Brien walked down the aisle she maneuvered around several customers who were turned perpendicular to her as they were looking at the glass doors that house the chilled drinks.

9. As she turned back and began walking again she walked straight into a "lally" support column that was in the middle of the aisle.

10. The lally column was painted a very similar color, at that time, as the back wall of this particular aisle as well as the flooring.

11. Due in part to its placement in the middle of an aisle where customers were explicitly drawn to look away from it; its coloring and lack of perspective from the lack of any accent colors on the floor or walls, O'Brien did not see the column until she hit her head on it.

12. As opposed to almost all the other columns in the store which are either nestled into the shelves so as to not be in the walkway, or, are clearly marked with either safety markings, or have displays themselves around the columns so that attention is called to the lally

column; these two columns, in an aisle where customers will by design be looking away from them, are not marked with anything and are colored same as back walls.

13. After hitting the column Ms. O'Brien attempted to hold on to the column so she would not fall down but her legs became weak and she was so dizzy that she did in fact subsequently fall to the floor.

14. Ms. O'Brien then next noticed the blood on her hands as she was having trouble staying conscious.

15. CVS employees called 911 and Emergency Medical Technicians arrived who took her, via ambulance to Anna Jacques Hospital Emergency Room in Newburyport, MA for treatment and stitches.

16. Ms. O'Brien's memory is somewhat hazy during her ER visit as she feels she may have been in and out of consciousness she remembers that she was X-Rayed and checked for a concussion.

17. The Anna Jacques Emergency Room  recommended a follow up at the Massachusetts Eye and Ear Infirmary. (MEEI)

18. As her symptoms in the subsequent days became more severe, she believes she may have been in shock after such a traumatic blow to the head.

19. The tests at MEEI showed diminished vision after the incident.  Ms. O'Brien has suffered from a concussion, post concussion symptoms, deep pain behind the eye, severe headaches, problems reading, increased double vision and depth perception.  The injury has seriously diminished her ability to sell real estate to this day.  She had to wear an eye patch for an extended period of time.

20. Ms. O'Brien has Pigment Dispersion Syndrome (PDS) in her eyes.  PDS is a rare condition where the pigments in her iris come loose and become embedded in the aqueous humor of the eye causing eventual Pigmentary Glaucoma and blindness.  When traumatic injury happens. Patients with Pigment Dispersion Syndrome develop permanent irreversible damage to the optic nerve. The subsequent vision loss is irreversible.

21. Any activity that "jars" or creates trauma to the head can cause an acceleration of the blindness. As an example. Ms. O'Brien had to give up horseback riding because just being on the horse (not even falling off) was too much of a risk according to her doctor at MEEI. Dr. Turalba.  This is because almost no vigorous activity is allowed if possible.

22. The amount of damage done by this injury accelerated Ms. O'Brien's PDS and advanced her optic nerve towards Pigmentary Glaucoma. It is apparent now and even more so in the future.

23. Attached to this complaint as Exhibit A are pictures of Ms. O'Briens eye and her injury. as well as Exhibit B which shows the pole in the store as it is now. CVS subsequently at times placed decorations and dispensers on the pole.

24. Exhibit B shows the pole in question, the floor, the walls behind the pole and the ceilings.

25. Exhibit B clearly shows the pole in the middle of the aisle is difficult to see as due to its color and background it blends in to the similarly colored background.

26. Exhibit B clearly shows the pole is the middle of the aisle. In any other aisle it would be well within the landowners purview that someone could walk into or encounter this pole and be injured.

27. Exhbit B also shows the pole is in the middle of an aisle where customers gaze is not only possible but designed to look away from pole. Customer could be walking and gazing at drink display or could grab something from display, back up and hit pole. It is not only forseeable but likely that customers will spend time in that aisle not looking at the pole.

28. As such the lally pole falls under the precedent of *Dos Santos vs Coleta*, 465 Mass. 148 and Restatement Second of Torts, at section 343 A. *Dos Santos* clearly states it is foreseeable for the potential for the landowner to have "Such reason to expect harm to the [lawful entrant] from known or obvious dangers may arise, for example, where the [landowner] has reason to expect that the [lawful entrant's] attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the [landowner] has reason to expect that the [lawful entrant] will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."

## COUNT I
### Negligence

29. Defendant CVS at Pond St, is a public store where members of the public freely patronize and shop

30. CVS should have anticipated that the placement of the pole in the "chilled drink' aisle would necessitate customers looking away from the pole as they browsed the beverages which were housed in a chilled refrigerator.

31. CVS did in fact know that a pole in the middle of an aisle could be run into by children or walked into by adults; especially those with poor eyesight who naturally would be in a store with a pharmacy housed inside of it, as evident by its clearly marking or warning customers of other poles.

32. The chilled refrigerator is constructed the length of the aisle, with separated doors sectioning off different types of beverages, which are glass are for the express purpose that people see into the unit.

33. Design is intentionally set up so that customers will look away from lally pole as they browse.

34. Due to this CVS had reason to expect that certain customers would be walking while browsing the drinks and would be looking away from the lally poles and could reasonably foresee that walking perpendicular to an unmarked pole would lead to a customer walking into it.

35. The other precautions, caged displays around poles, displays on the poles, poles nestled into the shelving etc... , taken on all other lally columns at the time of O'Brien's accident, prove that business owner did have actual and not just constructive foresight of the potential harm the columns posed.

36. As such, CVS, through failing to warn, was negligent in its placement of pole without putting appropriate warning of dangerous condition.

37. CVS has a duty as a business owner to keep its premises reasonably safe for customers.

38. The pole in the middle of the aisle is not open and obvious as due to its color and background it blends in to the similarly colored background.

39. This makes it difficult to see the depth of the pole and notice it in the first place.

40. Even if the pole was open and obvious as it is in the middle of the aisle it is well within the landowners purview that someone could walk into or encounter this pole and be injured.

41. As such the lally pole falls under the precedent of Dos Santos and Restatement Second of Torts. at section 343 A.  Dos Santos cites potential for the landowner to have "Such reason to expect harm to the [lawful entrant] from known or obvious dangers may arise, for example, where the [landowner] has reason to expect that the [lawful entrant's] attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the [landowner] has reason to expect that the [lawful entrant] will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."

42. As such CVS through negligent design was negligent in its placement of pole without putting appropriate warning of dangerous condition

43. As such CVS was negligent and breached its duty to Plaintiff and damages resulted

## Count II
## (against DEFENDANT SEDGWICK)

44. Defendant Sedgwick Insurance is a company that offers liability insurance to entities doing business in the Commonwealth of Massachusetts.

45. Defendant Sedgwick Insurance was aware that Plaintiff O'Brien was insured on their property.

46. Defendant Sedgwick Insurance had time to investigate Plaintiff O'Briens claim and view the scene of incident and see that pole clearly was in middle of beverage aisle where customers could be distracted and walk into pole.

47. Defendant Sedgewick is presumed to be aware of Dos Santos decision in 2013 as they are a corporation in the business of providing liability insurance and Plaintiff's injury occurred in 2017.

48. Sedgwick as a liability insurer is presumed to know that CVS had a duty to keep its premises safe from foreseeable dangers.

49. Plaintiff was acting in a reasonable manner in CVS and lally pole was placed negligently with no warnings on it. As such liability was clear.

50. Sedgwick through investigation should have found that, as shown by the other poles in the building either being marked or having some precautionary measure, CVS had in fact contemplated this type of injury prior to O'Brien's injury and injury was foreseeable.

51. Sedgwick is also presumed to know that when evaluating reasonableness of Plaintiff's conduct, liability turns on how a reasonably prudent person with a similarly significant visual impairment would conduct themselves, rather than as a reasonably prudent perfectly sighted person.

52. O'Brien was not rushing and she was not acting in an unreasonable manner. O'Brien did not do anything that would have unreasonably distracted her from making her way through the store.

53. Defendant Sedgwick puts forth in their final settlement "offer" a theory of liability which states, as a practical matter, all people with disabilities are not welcome to patronize CVS as any injury they sustain would be solely their fault due to their disability.

54. Sedgewicks conduct has been reprehensible. Sedgwick did not answer Plaintiff's attorney for an extended period of time. Defendant did not thoroughly investigate site of incident. Defendant did not read case law stating that the open and obvious doctrine would not apply here and shield them from liability. Defendant dismissed Plaintiff due to her having a disability so anything that happened to her in that building was justified stating that they were not liable for Plaintiff O'Brien's injuries because (paraphrasing) A. the danger was open and obvious and B. O'Briens lack of depth perception provided immunity to CVS.

55. *Defendant Sedgwick is also presumed, as a liability insurer, to know the Americans with Disabilities Act.*

56. Liability was clear under <u>Dos Santos</u> that CVS failure to warn and/or negligent design was controlling law in this incident. Because of this Sedgewick had a duty to make good faith settlement efforts.

57. Sedgewick offered up a "nuisance" amount of seven hundred and fifty doolars. (750.00)

58. *Sedgewick cited no medical expert testimony nor did agent of Sedgwick hold himself out to be a medical doctor or opthamologist.*

59. Sedgewick's agent did not state that he had consulted with any doctors on Ms. O'Brien's pre-existing condition.

60. Defendant's position is ignorant of the law and runs afoul of public policy runs as well of the Americans With Discrimination Act but more pertinent to this matter, breaches the duty laid out as Insurer in G.L.c 176/D.

61. *Sedgewick has breached its duty to Plaintiff by not engaging in good faith settlement discussion and are liable under G.L. c 93A.*

<u>Count III</u>
(CVS)
Negligent Infliction of Emotional Distress.

62. As stated above Pigment Dispersion Syndrome is a progressive disease which gets worse over time with severe impact.

63. From pictures and medical report Plaintiff O'Brien clearly sustained severe damages. It is not if, but how badly, her eyes will be affected in the future. Her pain and suffering is apparent from her injury, her post concussion symptoms and damage to her eye. She is

nervous and fearful and the thought of her PDS getting progressively worse to the point of blindness due to this accident has caused her extreme anxiety.

64. Damage from trauma can manifest itself years after injury.

65. Plaintiff is filled with anxiety every day that this trauma will eventually lead to her blindness.

66. Plaintiff frequently suffers panic attacks and has had her depression furthered due to this injury.

67. CVS negligence and breach is proximate cause of Plaintiff's damages.

## DAMAGES

WHEREFORE, CVS did breach its duty as a business owner with its negligent design and failure to warn and Plaintiff was harmed as a result Plaintiff requests this court award damages for pain and suffering, present and future damages as well as Negligent Infliction of Emotional Distress, in the amount of Two Hundred Thousand Dollars. (200,000.00)

WHEREFORE, Defendant Sedgwick Claims Management Services used deceptive business practices such as stall tactics, as well as being derelict with the handling of this claim, as well as unreasonable settlement offers, as well as unlawfully stating that liability was not clear even when faced with explicit case-law showing the contrary and instead taking the unlawful act of blaming Ms. O'Brien's disability (A.D.A) for their negligently placed pole with no warning around it, Mrs. O'Brien also asks for an addition Two Hundred Thousand Dollars (200,000.00)

WHEREFORE Plaintiff requests a Bench Trial and requests the court award all remedies proper,

Signed this date :

Mary Katherine O'Brien,
Submitted by her attorney

Robert J. LeGrow, Esq.
8 Drew St
Newburyport, MA 01950
781-710-7979

666794

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): Mary Kathryn O'Brien | COUNTY | |
|---|---|---|
| ADDRESS: 103 High Rd | Essex | ▼ |
| Newbury MA 01951 | DEFENDANT(S): CVS Health Company | |
| | and | |
| ATTORNEY: Robert J LeGrow | Sedgwick Claims Management | |
| ADDRESS: 8 Drew St | ADDRESS: CVS - One CVS DriveWoonsocket, Rhode Island 02895 | |
| Newburyport, MA 01950 | and | |
| | Sedgwick Claims Managemetn - 8125 Sedgwick Way MEMPHIS, TN 38125 | |
| BBO 666764 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B-99 | Other Tortious Action | F | ☐ YES   ☐ NO |

"If "Other" please describe:   Plaintiff walked into a pole not clearly marked in CVS

Is there a claim under G.L. c. 93A?
☒ YES   ☐ NO

Is this a class action under Mass. R. Civ. P. 23?
☐ YES   ☐ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .............................................................................................. $5,300.00
2. Total doctor expenses ................................................................................................ $2,000
3. Total chiropractic expenses ........................................................................................ $
4. Total physical therapy expenses ................................................................................. $   .
5. Total other expenses (describe below) ........................................................................ $
Subtotal (A): $

B. Documented lost wages and compensation to date ....................................................... $
C. Documented property damages to date ........................................................................ $
D. Reasonably anticipated future medical and hospital expenses ....................................... $10,000
E. Reasonably anticipated lost wages .............................................................................. $5000
F. Other documented items of damages (describe below) .................................................. $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$23,300.00

#### CONTRACT CLAIMS
(attach additional sheets as necessary)
☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $ 23 300 00

Signature of Attorney/ Unrepresented Plaintiff: X          Date: 3/21/20

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X          Date: 3/21/20

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L.c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action Involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (A) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (X) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (F) |
| C99 Other Real Property Action | |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (A) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c. 123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

## TRANSFER YOUR SELECTION TO THE FACE SHEET

| EXAMPLE: | | | |
|---|---|---|---|
| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? ☒ YES  ☐ NO |
| B03 | Motor Vehicle Negligence-Personal Injury | F | |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 20ncv00476

OBrien, Mary B ........................................., Plaintiff(s)

*v.*

C.S. Corporal ........................................., Defendant(s)

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve upon Robert J. LeGrow

plaintiff's attorney, whose address is 8 DeWSt, Newburyport MA 01950, an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

43 Appleton Way Lawrence, MA 01841 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Judith Fabricant, Esquire, at Salem, the
day of , in the year of our Lord two thousand

*Thomas H. Driscoll Jr.*
Clerk

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein *and* also file the original in the Clerk's Office.

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 20 ___ , I served a copy of
the within summons, together with a copy of the complaint in this action, upon the within-named
defendant, in the following manner (see Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated: _____ , 20 ___ .       _____

**N.B.**   TO PROCESS SERVER:-
PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

| |
|---|
| , 20 . |

COMMONWEALTH OF
MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No.

O'Brien MALYK
Plaintiff(s)

v.

C.U.S. ET AL
Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)